All rise. Illinois Senate Court, 5th Division, Ballot Session. I'll protest if Robert E. Gordon is presiding. Thank you, I'll proceed. 1537-74, Board of Trustees of the City of Harvey Firefighters' Pension Fund v. City of Harvey More justices. Would the lawyers who are going to argue this case please approach the bench and introduce yourself to the court. Yes, for the record, Your Honor, my name is Mark Roth, R-O-T-H. I represent the City of Harvey along with Bob Fioretti. My name is Jeff Goodloe with the Charleston Goodloe-Marzullo. I represent the Plain of the Pension Board. I just want you fellas to know that if there's anything that you want this court to take judicial notice of, we have the ability to do that. Because on one of your issues, the issue as to whether Harvey was on the verge of an insolvency or imminent bankruptcy, if you want to bring us up to date on anything and want us to take judicial notice, we can do that. In fact, you could file a document today or tomorrow, but certainly soon, setting forth whatever you want us to take judicial notice of. Yes, thank you, Your Honor. How much time are you going to reserve for rebuttal? I assume it's 20, 20 and 10. Is that correct, Your Honor? Well, it's usually 15. Okay. Well, then I'll reserve five for rebuttal. Okay. Thank you. If it pleases the court, once again, my name is Mark Roth for the City of Harvey. Counsel, can you just raise your voice? You're competing with the air. That's not a mic. Yes, certainly. Okay, thank you. The trial court's ruling in this case that the pension fund had a statutory right to a particular level of funding, and then when the trial court entered a damage award and an injunction based on that statutory right, is actually contrary to Illinois Supreme Court precedent and to this court's opinion in Riverdale. Wasn't the Pension Act amended? Did that amendment have any effect? Well, Riverdale dealt with the police pension fund, and there was an amendment in 2011 to both the pension fund and the firefighters fund. But the Riverdale case, I mean, you know, they provided a large percentage of what was due in the pension, where in this case, for the last number of years, Harvey contributed nothing. Well, Your Honor, actually, as you indicated earlier about judicial notice, there is one thing I'm going to be filing today. And just to bring you up to date on where we're at, because the briefing in this case, the record on appeal ends in about 2015. That's when the judgment was entered. And now, to bring you up to date, as of last night, I received from the controller for the City of Harvey that for the period of time from July of 2014 up through the end of December 2016, which is the latest statistics that we have, the City of Harvey contributed $2,177,319.31 to the firefighters pension fund, plus the City of Harvey, during that same period of time, that's 2014 through the end of 2016, contributed another $167,591.78 through the PPRT, personal property replacement tax. But you're going to have to show us with some citation to the law of how we could take judicial notice of that. Well, I have actually printouts from the Cook County Treasurer's Office and a printout from Harvey for the checks that they wrote for the PPRT, which certainly I know the court can take judicial notice against facts. Obviously, the printout from that... Has the controller published these facts, these figures? I will check on that. But I wanted to make sure that when I came for this argument today that we had the very latest understanding of what Harvey was contributing to the firefighters fund, so I could present that to you. I'll find out if they're published. If they are, obviously it's a public record. It's something that could be subject to judicial notice. But certainly also, it's not made by Harvey, it's made by the Cook County Treasurer's Office showing amounts that were paid directly to the firefighters fund. So we will do the requisite due diligence to put this in a shape that's appropriate for the court taking judicial notice of those facts. But in any event, what the trial court did is they said that they recognize that there's no contractual or vested right to a particular level of funding. But what the court did then, they went beyond that. And they said, okay, well, there's a statutory right. In other words, the City Council of Harvey has to abide by the guidelines in the pension code for funding. And that's been rejected by the Illinois Supreme Court. That's the Scordicchi case. And in addition, this... So what you're telling us is that in all of the case law, there had to be a finding of a verge of eminent bankruptcy or insolvency before damages could be assessed. Is that what you're telling us? That's correct. And in fact, that's the holding in Riverdale. And the fund here is asking in this case that you reverse your decision in Riverdale. That's a first district opinion. And the fund is asking in this case that that be reconsidered. And also the fund is asking that, in fact, this court reject the verge of eminent bankruptcy standard, which is Illinois Supreme Court precedent. Now, they couch it in their briefs in terms of the fact that they're preserving that issue in the event that this reaches the Illinois Supreme Court and they're going to ask the Supreme Court to get rid of the eminent bankruptcy standard. But make no doubt about it, that's what they're asking to have done because that is the state of the law right now. Sklodicky, McNamee, Lindberg, all those Illinois Supreme Court cases say that there's no way to enforce any pension funding unless and until a fund is on the verge of eminent bankruptcy. And the verge means now. Now. It can't mean it's obligations now. And what the evidence... Yeah, but there's no case law that says verge means now. Well, actually, the Sklodicky case does indicate that that means now. Are you talking about Sklodowski? Sklodowski, yeah. I'm sorry. That's all right. Unless there's another one. Okay. Sklodowski held that if the funds have to be at a level that at this point in time, and this is cited in the Riverdale case, that at this point in time show that it's on the verge of eminent bankruptcy. Because what's happening here is... If we would take the position that it has to be now, then if we would wait that long, there would be no more pension fund for the firefighters. Well, then the question becomes, how far out in the future do you look? That's right. What the fund is saying is that if at the time of this briefs, when these underlying cross-summary judgment motions were filed, the fund is saying, and their experts are saying, look, if Harvey doesn't make any contributions whatsoever from now and in the future, then at that point in time, the fund is going to run out of money because of the number of beneficiaries, recipients, and investment return. But that's not the case because Harvey has been funded. In fact, in the last year available, if you take a look at the appendix, we have the amounts that were allocated and the amounts that were funded. In the last year that we have, this is appendix A23, Harvey levied $600,000 for the firefighters pension fund. Harvey contributed $600,000 for the pension fund. In the years that we just talked about, I'm going to provide the court with judicial notice, there's been an additional infusion of about $2.3 to $2.4 million to the firefighters pension fund. So the whole basic assumption that the pension fund is saying is that in the future, if Harvey doesn't contribute any money, the fund's going to go broke. But Harvey's contributing money. In fact, we show that they've contributed $600,000 in 2014, and over the course of the last couple of years, they've contributed $1 million. So we are contributing money. So they're not on the verge of imminent bankruptcy. But do you believe Harvey could contribute money whenever they want to and not contribute whenever they desire not to? Is that what the law says? Well, the Riverdale court indicates that, and Riverdale took a look at the decision in the city of Rockford. The Riverdale case, you keep relying on that, but you know, in some instances, they paid 97% of what they should have paid. The least they ever paid was 57%. So you can't use those figures compared with Harvey, who paid nothing for years and has materially affected the firefighters pension fund. Well, in some instances, we actually overfunded. For example, in 2007, we paid more than we had allocated to the fund. And in other years, we didn't pay anything to the fund. There's no question about it. But what the decisions say, I know I keep coming back to Riverdale, and I do that because that's certainly a persuasion. I think that can be distinguished. Riverdale, I think, is distinguished because they substantially complied. Here you didn't comply at all. So there's quite a difference. Well, we complied in some years and did not comply in other years. Okay, that's a question that we'll decide whether you did or not. Yes, of course. But what those cases stand for, the proposition, is that the court is not going to take away a city council of a municipality's discretion to enact a particular tax. And the Rockford case in Evanston and Riverdale all say that this is a discretionary tax and they're not bound by the specific formula in the pension code. But in any of those cases, did the municipality fail to provide financial annual statements to the state? Not that I'm aware of. In any of those cases, was the municipality at disarray with allegations of fraud and criminal activity? Not that it's reported in the record. However, let me address that, though, Your Honor, because we are, as the court indicated, the trial court indicated, that while this may not be a new day in Harvey, it's pretty close to a new day because as we know from the record, we have a prior comptroller, Mr. Lutke, who was... Not paying bills. Yes, to put it very mildly. And now we don't have Lutke and we have a new comptroller, Lewis Williams, and we're cleaning up our act, to kind of put it in a vernacular. And so, you know, although the city was in disarray and the finances were in disarray, we're getting better, as is evidenced by the fact that we're contributing to the pension fund. And the one thing that's very important is that no one has lost any benefits here. There's never been a beneficiary who has not been paid. And the case law says that the court is not going to take the discretion away from the city council to determine the exact amount that should go to the pension code. And that's even... The pension fund wants to rely on the case that they cited of Village of North Riverside. And Village of North Riverside actually supports our position. In that case, the pension, public pension division, has an enforcement mechanism... You keep quoting a case where most of the money was paid in. Here we have none of the money was paid in. There's quite a difference between those two cases. Well, I would agree that on some years, no money was put in. On other years, money was put in exactly the amount of funds. Sometimes, whenever they felt they had to put a few bucks in, they put a few bucks in. But how about protecting the firefighters? We have been continuously funding the pension fund. As I indicated before, and with the printouts that I'm going to be providing to you, over the last two years, we've put in over $2 million into the fund. We are very concerned about protecting the firefighters. We're not flipping at all about the firefighters. We want to protect the firefighters. They're valuable employees of the city. I assure you of that. We're committed to taking care of them. Can I just say this? I'm about to make my head explode. Of course, I see there are a lot of firefighters here. And of course, if we can protect the firefighters or their pension, we will do it. But we have to follow the law. I'm saying that because I wrote the Riverdale opinion. I've read McAfee. I've read Stadowski. I've read those cases. I know what they say. It has absolutely no relevance whatsoever to our respect for the firemen or the policemen or any other union. People deserve to have their pensions. But we have to follow the law. Yes, Your Honor. And we appreciate that. And that's all that we're asking that this court do, is to take a look at the Supreme Court cases, the Stadowski, McNamee, Winberg, Riverdale, and even this latest opinion, Village of North Riverside, which actually, in that case, the court said that the village, or the board in that case, brought an action to try and enforce the funding to the pension code. And in that case, the Department of Pension Division, they look at it, tell us what it is, and if that excuse makes sense and passes muster, then you don't have to fund the pension code to the exact guidelines that are set forth in the pension code. And that dealt with the police pension fund, but the police pension fund and the firemen's fund, firefighters' fund here, are essentially identical, certainly analogous. So we're trying to fund. We are trying to fund. We are doing a good job of it now. It's a neat bump in the road, but under the case law, that does not equate to a village of imminent bankruptcy. So I want to make sure I fully addressed your questions. The other thing I'd like to say is that with respect to the damages, I assume I'm past my time. With respect to the damages, what we have here is double, triple, quadruple counting, because every year there is an AAR, annual actuarial requirement, that's issued. And that annual actuarial requirement is what is necessary to fund up to 90% funding by the year 2040. So every year, that AAR takes into account the prior years, that whatever contributions there were, whatever change in beneficiaries there are, investment returns, and so on. So the AAR for 2014, for example, would account for whether there was no AAR paid for 2013 or whether it was less or more than was anticipated. And in this case, what the court did is they entered a judgment that could be four or five times what it actually should be. The proper amount of damages would be at the time that the municipality paid for it. What is the AAR at that point in time, less what did the municipality contribute? And so if we take a look at 2014, for example, which is the last years that we have, the AAR for that year was $2,070,500. We paid $600,000. So the proper damages would be $1,470,500. But you can't take and require us to pay all the past AARs because every subsequent year's AAR takes into account and it's subsumed into that AAR. Did the trial court have that information at the time when it entered its order regarding the 2014? Yes, it did, Your Honor. In fact, that's part of what we found as Appendix A23, but that was part of the underlying cross-summary judgment motion briefings. Yeah, but the problem is that the record on appeal here shows that the parties basically agreed that if there would be damages, the figure that the court used would be the figure. Now you're saying, no, it was too high. Correct. I believe it's a misstatement to say that the City of Harvey agreed to that. Well, I understand there were different lawyers at that time, but I'm not sure that that figure, but we'll have to deal with that. You want to save some time for your brother? Yes, thank you very much. Good morning, Your Honors. My name is Jeff Goodloe. Thank you very much for the opportunity today. I do appreciate it. May it please the court. Do you agree with the figures that were given to us the damages figures that were stated or the figures in terms of the money that's gone in since July 2014? I can't agree to that. I don't know where those numbers are coming from. Money has come into the pension funds since 2014. The City contends that they levied $600,000 in 2014 and contributed $600,000. They did not. They levied $600,000. They contributed $204,960 of that when the contribution should have been $1,781,000. So not anywhere close to what the pension code provides for under Section 4-118. If we go into 2015 and 2016, money's come in to the tune of about $1.5 million. But this court should ask itself why that money has come in. The money has come in because there's a trial court order in place, an injunction that requires the City to levy and contribute the annual actuarial requirement. The City wants you to believe that they just did that gratuitously. When going back to 2005, they had never done that. They had never met the annual actuarial requirement for this pension fund going back to 2005. To the tune of $1.5 million that should be in this pension fund today. So for the City to suggest that they've in any way complied with the plain language of the pension code is absolutely, completely disingenuous as we sit here today. And that's why it was going to be the very end of my argument, right? The City, they can't be left to their own devices. They were left to their own devices for years and now this pension fund is on the verge of default or even bankruptcy. So I encourage the court to look at why that injunction is so critical. And the critical thing also about the injunction is that with the injunction in place, the money is collected by the county clerk and it's remitted directly to the pension fund because the City admits that that's what it did in the past. It levied money for this pension fund, it collected it, and then it misappropriated that money and spent it someplace else, clearly in violation of the Riverdale case. But it's not only with this pension fund that they did that, right? They did that with the Chicago water case which is in the record. They did the same thing. They took the water from Chicago, they sold it downstream, and then they disposed to go to rehabilitate a hotel. What happened to the money? The mayor says, okay, absolutely, we're going to dispose this money, go ahead Mr. Lecky. Mr. Lecky lines his pockets, Mr. Gafarola takes millions of dollars, goes to India, and then says, I'm sorry, I'll repay you with 100-year-old Chinese gold bonds. And the money is gone. It will certainly benefit. Absolutely. I'd like to get to my main points. I have two points I'd like to argue. I apologize. My head was about to explode, so I apologize for that. The first argument is this, is that the trial court did not err when it found that there was a statutory right to funding. And I don't want to be impertinent because I'm going to disagree with this court's opinion in Riverdale, and I want to try to explain the opinion in the respect that it could be construed as saying that there's not a statutory right to funding is wrong. So the delegates to the Constitutional Convention said, we are not going to constitutionalize pension funding in the Constitution. We're not going to freeze that politically sensitive area of pension funding. Rather what we are going to do, we are going to leave it to the General Assembly to pass a law, a funding law, section 4-118 of the pension code. And it is plain and clear, it tells the city exactly what it is required to do each year. You shall annually levy this tax, which when added to revenue from other sources, equals the annual actuarial requirement. Assuming that it is so clear as you say, the Supreme Court still says that before you could assess damages that there has to be a finding of where you're on the verge of insolvency or imminent bankruptcy. Right. They threw that in there as a little wrench. It is a wrench. I think that you can't bring a constitutional claim under Article 13, Section 5 until you can show the pension fund is on the verge of default or imminent bankruptcy and the court is taking language from that. But the cases that that comes from are factually distinguishable. I think it is extremely important that the court look at those cases because what those cases hold, Lindbergh, McNamee, and Sklodowsky, is not that there is no statutory right to funding. It says that you don't have a contractual right to the continuation in a funding statute. However, there is a funding statute in place and the governor exercises his legitimate constitutional authority under Article 4, Section 9b of the Constitution to do a line-item veto. And the legislature did not allow the veto. And the court said, well, he has the constitutional authority to do that. I'm sorry, the provision has been vetoed. You can't enforce it. You have no contractual right under Article 4 of the Pension Code. It is what it is. It's there. Same with McNamee. In McNamee, the legislature changed the funding law. Plano soon said, you violated Article 13, Section 5. You, the legislature, cannot change the funding law. And the court said, of course you can. Right? You can't sit here and say that we're bound contractually to follow the old law. The legislature can amend the law. That's what happened there. That's perfectly fine. Same in Sklodowsky. The legislature came along and amended the funding law. And Plano said, it violates our contractual right. We should be able to enforce the old one. And the court said, no, you have no contractual or vested right to the continuation in the funding law. But in none of those cases did the court say that the plain language of the statute as it exists is not enforceable. Absolutely nowhere in any of those cases. Funding law law is another one. It involves tenure for teachers. So, teachers in Chicago used to have permanent tenure under the statute. Legislature comes along and changes the law. The teachers sue and say, you're violating our contractual right. We had a contractual right to permanent tenure. And the Supreme Court said, no, you don't. You do not, but legislature can change the law. So, what do we have here? Is it a situation where there's been a change in the law? No, the law is what it is. It's section 4-118A of the pension code. The city just doesn't follow it. So, to the extent that the Riverdale opinion says we're relying on Lindbergh, Swarovski, and McNamee, I think it's a non-separate to say there's no, those cases hold that there's no contractual continued right to a particular funding formula. Therefore, there's no statutory right to enforcement. And so, holding, the problem there is that it does exactly what courts are not supposed to do. Which is to say that the permanent energy statute doesn't mean anything. Right? It means we'll take it out and replace it with a recipe for anything with it. But it's there. It exists. And they just don't follow it. They never have followed it. So, I think it would be important to, and I don't come before this court lightly asking it to overrule that part of Riverdale. I do not. But I think there are times when courts have to reflect and say, you know what? In assessing the circumstances and the plain language of the statute, I think we got this wrong. And I don't think the Supreme Court's right to render an entire statute meaningless and superfluous. That's not what courts are supposed to do respectfully. So, I would really ask the court to reconsider that issue. And if you do that, what's the worst case scenario? Right? We're faithful to the plain language of the statute. Right? It requires the municipalities to properly fund their pension funds. In this particular case, it's completely in accord with the Supreme Court's prior holdings in  McAmey, Sklodowsky, and Funamola. And it's completely in accord with this court's prior holdings in 1981 in Rockford, in 1996 in Evanston, and in 2016 in Boron versus Village of North Riverside, which say the municipality has discretion in terms of how it wants to fund, but it still has to exercise that discretion within the framework of the statutory. It uses different assumptions and those different assumptions may produce a lower number that complies with section 4-118. That is their discretion. I have a question. Yes, ma'am. I'm loving your argument, sir. Oh, thank you. But this is my question. The statute says, and I'm just a hypothetical, the statute says you have to put in 15 percent, whatever the figure is, and then the city, are you then saying if the city puts that 15 percent in, that because they don't have money to pay something else that they can't use their discretion and not pay it that year but make it up the next year? If the city actually, if there's any evidence in the record to support that the city actually did that, maybe that would be something. But I disagree with that. And it's the exact same argument that the state used in in-rate pension reform litigation when it said we have a financial crisis in this state and because of this financial crisis we're going to change people's pension benefits. The Supreme Court said no. Yeah, but that's a different issue  question. I mean, if they can't pay I can't think of anything more important than water and fire and police, but if they need money to, okay, to pay some other salaries, to keep the government running, can't they use their discretion not to pay that year but to make it the next year? No. The answer to that is no, and I don't say that lightly, but the city's discretion in that respect has been completely preempted by the General Assembly with Section 4-142 of the Pension Code. So they are bound by what the General Assembly tells them to do, and if the General Assembly wanted them to have some sort of discretion with respect to funding different parts of government, then the General Assembly could have written language into the Pension Code that says, you know, in this particular year, if you're having budgetary issues, you can reduce it. Or the General Assembly could just come around and change the law and say, this is too expensive for municipalities, so we're going to amortize, extend that out to 2060, and you only have to be 70 percent funded, but it's up to the General Assembly to make that call. It's not up to the General  make that call. And that has never been a justification for not properly funding pensions. I mean, the Supreme Court has rejected that. It appears to be, from all of the cases, when you look at all of the cases together, that damages cannot be assessed unless there's a finding that the municipality is on the verge of insolvency or bankruptcy. So why don't you tell us how they're on the verge of insolvency or bankruptcy? Sure. So verge of default or imminent bankruptcy is the standard. So I go to the word verge. What does it mean? It doesn't mean that you're actually there and bankrupt and default. You're on the verge of it. So you go to the definition, you're on the outer edge, the boundary of default. So what does that mean in the context of a firefighter's pension fund that's supposed to last in perpetuity? To say that you're on the verge of default or imminent bankruptcy is the standard. So I think that the evidence in the record doesn't bear that out. If you just focus on what the witnesses testified to, this is   simple case, but it's extremely low. You can't focus only on percent funded because it's a bad way to measure the health of a pension fund. It really is. What you have to focus on is the conduct of the  fund. It's the most rational thing in the world. What's happened to this pension fund? In 2008 it had $17.5 million in it. In 2015 it had $10 million. As we sit here today it has just over $9 million. Is that a result because they are paying it out now? They are paying it back into the fund? It's going down  are paying $2 million a year instead. We have to pay those benefits. It's over $2 million now. The returns you would have if  had a pension fund would have been $7.5 million. This is a crisis. I represent a lot of these pension funds. If this pension fund is not there is no pension fund in the state. All pensions funds in the state are underfunded. Underfunded status is not the key inquiry. Take the judges retirement system. It's less than 30% funded. But what are the assets doing? They have gone from $200 a  $100 a year. The problem is it's structural. The funding mechanism is not good enough to keep up with the accruing liabilities. It's the same as Chicago Fire. It hovers at a billion dollars. But the money that's going in is the effective multiplier. Chicago Fire couldn't fit this status. These guys? This is entirely different. When you take into account what this city has done, not filing   the city to follow the law. If you do that, I think it saves suspension funding. That's a great thing. It's in accord with the constitution. Thank you for your time. 1          14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40 41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60 61 62 63 64 65 67 68 69 70 71 72 73 74 75 76 77 78 79 80 81 82 83 84 85 86 87 88 89 90 91 92 93    97   100      106 107 108 109 110 111 112 113 114 115 116 117 118 119 122               207 208 209 1010 1011 1012 1013 1014 1015 1016 1017 1018 1019 1020 1021 1022 1023    1027 1028        1036 1037 1038 1039 1040 1041 1042 1043 1044 1045 1046 1047 1048 1049               1053 1053 1054 1055 1055 106 1066 1077 1078 1074 1075 1076 1075 1077 1078